UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-23907-ALTMAN

**JONPAUL MARCEL NADEAU**,

    *Plaintiff*,

v.

**BRICKELL BROKERS LLC**, *et al.*,

    *Defendants.*
_____/

### ORDER

The Plaintiff, JonPaul Marcel Nadeau, has filed a Motion for Final Default Judgment (the "Motion") [ECF No. 53]. On April 9, 2025, the Clerk of Court entered default against the sole remaining Defendant, Brickell Brokers LLC, *see* Clerk's Entry of Default [ECF No. 45], who failed to secure new counsel or otherwise defend against this case after its counsel withdrew.[1] *See generally* Docket. After a careful review of the Motion, the Complaint, and the supporting exhibits, we now **GRANT** the Motion.

    **I.**    **Jurisdiction and Venue**

Under Federal Rule of Civil Procedure 55(b)(2), the Court may enter a final default judgment where a party has failed to defend the case. Still, "[t]here must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987). Our review of the record in this

---

[1] We gave the remaining Defendant multiple chances to secure new counsel. *See* Paperless Order to Show Cause [ECF No. 43] ("We'll give the Defendant one more chance [to comply with our order to secure new counsel]. The Defendant shall file a notice of appearance for its new counsel **by April 6, 2025**, and explain its delay. If the Defendant fails to obtain counsel by that extended date, the Plaintiff must promptly file a motion for clerk's entry of default against the Defendant."). But the Defendant never complied. *See generally* Docket.

1

case confirms that the Complaint adequately establishes our subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a), our personal jurisdiction over the Defendant, and the propriety of venue in this District. We also find that the Complaint sufficiently pleads a violation of 17 U.S.C. § 501(a) (copyright infringement). The Plaintiff has thus satisfied the requirements for the entry of a final default judgment against the Defendant.

## II.     Statutory Damages

The Plaintiff requests "$15,000.00 in statutory damages" under 17 U.S.C. § 504(c). Mot. at 11. That figure comes from "a common multiplier of three" applied to a "calculation of actual damages" of $5,000.00 for the infringement of one image. *Id.* at 9, 11. The $5,000.00 valuation, in turn, is based on a "scarcity" multiplier of five applied to the Plaintiff's standard licensing fee of "$1,000.00 per photograph." *Id.* at 9.

"Generally, statutory damages are awarded when no actual damages are proven, or actual damages and profits are difficult or impossible to calculate." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 850–51 (11th Cir. 1990) (first citing *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 231–33 (1952); and then citing *Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1126 (2d Cir. 1989)). "Several courts have found statutory damages are especially appropriate in default judgment cases because the information needed to prove actual damages is uniquely within the infringers' control and is not disclosed." *Clever Covers, Inc. v. Sw. Fla. Storm Def., LLC*, 554 F. Supp. 2d 1303, 1311 (M.D. Fla. 2008) (Presnell, J.); *see also PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004) (Cohn, J.) ("Several courts have found statutory damages [e]specially appropriate in default judgment cases due to infringer nondisclosure." (collecting cases)).

We've previously said that finding a "reasonable licensing fee" for the image and then multiplying it by three to five "is an appropriate (and well-accepted) method for determining statutory damages." *Zuma Press, Inc. v. Alivia, LLC*, 2024 WL 4371997, at *3 (S.D. Fla. Mar. 26, 2024) (Altman,

J.) (first citing *Aug. Image, LLC v. Auge Internacional Media, LLC*, 2022 WL 20834406, at *4 (S.D. Fla. Nov. 16, 2022) (Altonaga, C.J.) ("Where (as here) willful infringement has occurred, courts will generally look to a plaintiff's actual damages and award three to five times actual damages to properly account for statutory damages properly."); and then citing *Broad. Music, Inc. v. Prana Hosp'y, Inc.*, 158 F. Supp. 3d 184, 199 (S.D.N.Y. 2016) ("[C]ourts in this Circuit commonly award, in cases of non-innocent infringement, statutory damages of between three and five times the cost of the licensing fees the defendant would have paid.")). Here, the "Defendant's conduct—as well as its decision not to defend against Plaintiff's claim—demonstrates that its conduct is willful." *Aug. Image, LLC*, 2022 WL 20834406, at *4; *see also* Mot. at 7–8 (alleging "willful" infringement).

"To demonstrate entitlement to a reasonable licensing fee," the Plaintiff may provide "evidence of benchmark licenses, that is, what licensors have paid for use of similar work[.]" *Lorentz v. Sunshine Health Prod., Inc.*, 2010 WL 11492992, at *6 (S.D. Fla. Sept. 7, 2010) (Torres, Mag. J.), *report and recommendation adopted*, 2010 WL 11493070 (S.D. Fla. Nov. 15, 2010) (Moreno, C.J.) (cleaned up). In determining benchmark licensing fees, courts may look to the Plaintiff's actual licensing history and the fair market value of similar uses. Courts in our District have previously considered the licensing fees of "copyrighted photos similar in quality and popularity" to the infringed photos in determining what the Plaintiff would've charged had the Defendant "requested to create and license the Works to reproduce and display" them. *Wareka v. GM Belle Inst. Corp.*, 2025 WL 1471852, at *2 (S.D. Fla. May 22, 2025) (Altman, J.) (first citing *Sportswire v. Herrick Co., Inc.*, 2023 WL 11872632, at *4 (S.D. Fla. Nov. 22, 2023) (Middlebrooks, J.); and then citing *Affordable Aerial Photo., Inc. v. Aaron Chandler Constr., Inc.*, 2021 WL 2430999, at *3 (S.D. Fla. Mar. 23, 2021) (calculating a reasonable licensing fee by looking at the "typical" licensing fees for "copyrighted photographs similar in quality and popularity")). According to the Plaintiff, "[t]he typical range of fees Nadeau receives for creating and licensing the right to make use and display on the internet of one of his copyrighted photographs, similar in quality

3

and popularity to the Work, is approximately $1,000.00 per photograph." Declaration of JonPaul Marcel Nadeau ("Nadeau Decl.") ¶ 13. We find this rate to be a reasonable benchmark reflecting the fair market value of the use at issue. Given the Defendant's willful conduct, we apply a multiplier of three to the licensing fee, resulting in a statutory damages award of $3,000.00.

But the Plaintiff *also* asks us to multiply his typical licensing fee for the photograph by a "scarcity" multiple of five. Mot. at 9. We won't be doing that. We agree with the Plaintiff's general view that "[s]carce images typically demand a much higher fee than common images[.]" *Ibid.* But the record doesn't support the enhanced valuation the Plaintiff proposes in *this* case. To justify the use of a scarcity multiplier in this case, the Plaintiff relies on one (out-of-circuit) case, *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 385 (3d Cir. 2016). *See* Mot. at 9 (citing *Leonard* for "affirming a jury verdict of $1.6 million where the sum included [ ] three to five times the benchmark because of consideration of the scarcity factor for actual damages"). But *that* case involved highly specialized scientific imagery—"photographs of stem cells using electron microscopes." *Leonard*, 834 F.3d at 382. *Our* image, by contrast, is just a run-of-the-mill real estate photograph of a waterfront home with a pool (*i.e.*, the kind of photo almost anyone in Miami could take). *See* Compl. [ECF No. 1] at 3. And the Plaintiff hasn't shown that the image is "uniquely scarce" or "technically irreplicable." *Leonard*, 834 F.3d at 382.

True, we've applied scarcity multipliers to real estate photographs before. *See, e.g.*, *Affordable Aerial Photo., Inc. v. Palm Beach Real Est., Inc.*, 2021 WL 2823270, at *4 (S.D. Fla. July 7, 2021) (Altman, J.) (awarding a 4x multiplier that was "warranted" by the plaintiff's use of a "unique capture technique," monitored weather conditions, secured access to private property, and employment of "advanced photo exposure and special software" in post-production). Here, though, the Plaintiff provides no similar evidence of scarcity or uniqueness. All he says is that his work is "scare not only due to high quality, but also the unique technique applied to achieve an amazing result." Nadeau Decl. ¶ 15. That kind of conclusory allegation isn't sufficient to justify the multiple the Plaintiff seeks here.

4

### III. Permanent Injunction

The Plaintiff next requests a permanent injunction under 17 U.S.C. § 502(a). The Copyright Act "gives a court authority to grant injunctive relief to prevent further violations of Plaintiff's copyrighted material." *Markos v. Yacht Charters of Miami.com, LLC*, 2019 WL 8989936, at *4 (S.D. Fla. Oct. 2, 2019) (Torres, Mag J.), *adopted by* 2019 WL 8989935 (S.D. Fla. Oct. 23, 2019) (Scola, J.) (first citing 17 U.S.C. § 502; and then citing *Pacific & Southern Co. v. Duncan*, 744 F.2d 1490, 1499 n.17 (11th Cir. 1984)). To obtain a permanent injunction, a plaintiff must show: (1) that it suffered an "irreparable injury"; (2) that the "remedies available at law, such as monetary damages, are inadequate to compensate for that injury"; (3) "that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted"; and (4) that the "public interest would not be disserved by a permanent injunction." *Broadcast Music, Inc. v. Evie's Tavern Ellenton, Inc.*, 772 F.3d 1254, 1261 (11th Cir. 2014) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (cleaned up)). We agree that the Plaintiff has satisfied all four elements of a permanent injunction.

*First*, "[i]n copyright cases, irreparable harm is presumed on a showing of a reasonable likelihood of success on the merits." *Arista Recs., Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1314 (S.D. Fla. 2003) (Cohn, J.) (citing *Micro Star v. Formgen, Inc.,* 154 F.3d 1107, 1109 (9th Cir. 1998)). Here, the infringement "greatly impairs the market value" of the Plaintiff's photograph, reducing incentives for others to obtain a license to display it. Nadeau Decl. ¶ 14. *Second*, the Defendant's "pattern of infringement . . . demonstrates a realistic likelihood of future violations, which could not easily be remedied by damages." *Microsoft Corp. v. Tech. Enters., LLC*, 805 F. Supp. 2d 1330, 1334 (S.D. Fla. 2011) (Hoeveler, J.). *Third*, the balance of hardships also favors an injunction because, "[s]o long as the Defendant continue [its] infringement, the Plaintiff faces a significant risk of stolen sales, lost customers, and diminished reputation." *Affordable Aerial Photography, Inc.*, 2021 WL 2823270, at *6. The Defendant, on the other hand, "face[s] no hardship from an injunction prohibiting [its] unlawful

5

activities." *Ibid. Fourth*, the public interest is served by protecting copyright holders and upholding the integrity of intellectual property rights. *See Arista Records, Inc.*, 298 F. Supp. 2d at 1314 ("[T]he public interest is . . . in upholding copyright protections." (cleaned up)). In the end, "[g]iven the value of the copyrighted material, the ease with which it can be disseminated on the internet, and the irreparable injury the Plaintiff suffers when its works are displayed by others, we find that a permanent injunction is warranted in this case." *Viral DRM, LLC v. EVTV Miami, Inc.*, 2024 WL 728095, at *3 (S.D. Fla. Feb. 22, 2024) (Altman, J.).

### IV. Fees and Costs

The Plaintiff also seeks reasonable attorneys' fees and costs. *See* Mot. at 12. After reviewing the Motion and the Plaintiff's supporting declarations, we find that the Plaintiff is entitled to recover *some* of the fees and costs he's requested. "The Copyright Act of 1976, 17 U.S.C. § 505, provides in relevant part that in any copyright infringement action, the court may . . . award a reasonable attorney's fee to the prevailing party as part of the costs." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 519 (1994) (cleaned up); *see also* 17 U.S.C. § 505 ("In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."). Since the Defendant has defaulted, the Plaintiff is the prevailing party, which means that we must now determine whether the amount of the attorneys' fees the Plaintiff has requested is reasonable. *See* Mot. at 12 (requesting "$7,882.50" in attorneys' fees). It isn't.

"The party seeking attorney's fees bears the burden of establishing entitlement and reasonableness." *Sec. & Exch. Comm'n v. BK Coin Mgmt., LLC*, 2024 WL 4697686, at *2 (S.D. Fla. Oct. 22, 2024) (Goodman, Mag. J.), *report and recommendation adopted*, 2024 WL 4692191 (S.D. Fla. Nov. 6, 2024) (Scola, J.) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). "The movant must

supply the Court with detailed records showing the amount of time spent on the claim, as well as the nature of the activity at each stage of the case." *Ibid.* (citing *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988)). Federal courts use the "lodestar method" to "determin[e] a reasonable fee award." *Id.* at *3. This method requires us "to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citing *Hensley*, 461 U.S. at 433). We'll start with the requested rates before turning to the entries themselves.

*First*, we find all but one of the requested hourly rates unreasonably high. A reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387, 1389 (11th Cir. 1997). The Plaintiff requests fees for the following people: (1) Sanje Victoria Lara, an associate billing at $400.00 per hour; (2) Craig Anthony Wirth, a "former" senior associate at SRIPLAW billing at $375.00 per hour; (3) Tyler S. Unfer, a "client services liaison" billing at $175.00 per hour; and (4) Rebecca Pollack, a paralegal billing at $175.00 per hour. Declaration of Sanje Victoria ("Lara Decl.") [ECF No. 53-2] ¶¶ 8–16. All except for Mr. Wirth's rates are unreasonable.

Starting with Mr. Wirth, we've previously said that a rate of $450.00 is reasonable for a lawyer who has been practicing copyright law for nine years. *See, e.g.*, *Zuma Press, Inc. v. Alivia, LLC*, 2024 WL 4371997, at *4 (S.D. Fla. Mar. 26, 2024) (Altman, J.) (awarding "Jaymie Sabilia-Heffert (associate)," $450 per hour); *see also* Lara Decl. ¶ 10 (stating that Mr. Wirth was admitted to the Florida Bar in October 2016). We therefore agree that Mr. Wirth is entitled to bill at a rate of $375.00 per hour for the one hour he worked on this case. *See* Billing Records [ECF No. 53-3] at 4.

As to Ms. Lara, however, we've said that "$250.00 is a reasonable rate for a lawyer practicing copyright law with [her] level of experience [3–4 years]." *Corey Sipkin Photography LLC v. El Extrabase*

7

*Inc.*, 2025 WL 1432765 (S.D. Fla. May 19, 2025) (Altman, J.); *see also Covey v. Hair Construction, Inc.*, 2024 WL 5106790, at *1 (S.D. Fla. June 13, 2024) (Altman, J.) (same). We'll therefore reduce Ms. Lara's rate to $250.00 per hour for the fourteen hours she worked on this case. *See* Billing Records at 4.

The Plaintiff doesn't even try to explain what kind of work Mr. Unfer performed as a "client services liaison." We don't even know whether Mr. Unfer is a lawyer. Even if he were a lawyer, the billing records show that Mr. Unfer hasn't done any *legal* work on this case. Indeed, his tasks appear to be purely administrative in nature. *See* Billing Records at 2 (recording that Mr. Unfer "Contact[ed] Client for Authorization to File Lawsuit" and "Move[d] to Next Step or Close File"). And "work that is clerical or secretarial in nature is not separately recoverable." *Hansen v. Deercreek Plaza, LLC*, 420 F. Supp. 2d 1346, 1353 (S.D. Fla. 2006) (Seltzer, Mag. J) (cleaned up). So, we won't award any fees for Mr. Unfer's work.

As for Ms. Pollack, the paralegal, courts in our District have regularly found a rate of "$100.00 per hour" reasonable for paralegal work on a copyright-infringement case. *Markos*, 2019 WL 8989936, at *5; *see also Vallejo v. Narcos Prods. LLC*, 2020 WL 6815056, at *4 (S.D. Fla. Aug. 24, 2020) (Louis, Mag. J.), *report and recommendation adopted*, 2020 WL 5626635 (S.D. Fla. Sept. 21, 2020) (Smith, J.) (finding, in a copyright-infringement case, that a rate of $100.00 per hour was "consistent with this market" for a paralegal (citing *Burgos v. SunTrust Bank, N.A.*, 2020 WL 2299937, at *9 (S.D. Fla. Mar. 31, 2020) (Torres, Mag. J.), *report and recommendation adopted*, 2020 WL 2299936 (S.D. Fla. May 7, 2020) (Martinez, J.) (awarding an hourly rate of $100 for a paralegal))); *but see Corson v. Gregory Charles Interiors, LLC*, 2020 WL 6323863, at *5 (S.D. Fla. Aug. 7, 2020) (Reinhart, Mag. J.), *report and recommendation adopted*, Order, *Corson v. Gregory Charles Interiors, LLC*, No. 19-cv-81445 (S.D. Fla. Sept. 15, 2020) (Rosenberg, J.), ECF No. 17 (reducing paralegal rate to "$135.00 per hour" in a copyright-

infringement case). So, we'll reduce Ms. Pollack's fees for 10.7 hours[2] billed to $100.00 per hour. *See* Billing Records at 4.

*Second*, we've carefully reviewed each entry in the submitted billing records and find that the hours counsel claims (25.90 hours) are mostly, but not fully, recoverable. Specifically, we find all the entries reasonable, except for three submitted by Ms. Pollack. *See, e.g.*, Billing Records at 2 ("Update matter info, if needed"; "File COI-CDS (if needed)"; "Send Courtesy Copies to Judge if needed"). These three entries all include the conditional statement "if needed," which makes it unclear whether the tasks "were necessary or done in an abundance of caution[.]" *Goldstein v. Fortador, LLC*, 2024 WL 3106108, at *7 (S.D. Fla. May 20, 2024) (Goodman, Mag. J.), *report and recommendation adopted*, 2024 WL 3103355 (S.D. Fla. June 24, 2024) (Williams, J.). In other words, "they fail to describe what was actually completed in each entry." *Ibid.* As courts have emphasized, "[p]roof of the hours dedicated to the litigation and any corresponding objections must be made with sufficient specificity." *Home Design Servs., Inc. v. Turner Heritage Homes, Inc.*, 2018 WL 4381294, at *2 (N.D. Fla. May 29, 2018) (Jones, Mag. J.), *report and recommendation adopted*, 2018 WL 4658228 (N.D. Fla. Sept. 28, 2018) (Rodgers, J.) (citing *Norman*, 836 F.2d at 1301). In *Goldstein*, Judge Williams (of our Court) reduced the time a paralegal had spent on "problematic entries," such as those containing "conditional statement[s]," by 40%. 2024 WL 3106108, at *8–9. That's because there's "no way to determine" how much time counsel either "spent on each of the specific tasks" or "whether these tasks were necessary." *Id.* at *8. We too will reduce Ms. Pollack's time on these three problematic entries by 40% (leaving her with 10.28 total hours billed, instead of 10.7). All in all, then, the total amount of recoverable attorneys' fees is $4,903.00.

---

[2] As we'll explain, we're also reducing Ms. Pollack's hours from 10.7 to 10.28.

The Plaintiff also seeks reimbursement for a $405.00 case-filing fee and $62.60 in private process-server fees, which we find reasonable. *See* Lara Decl. ¶¶ 3–4 (listing the case-filing fee and the service fee); *see also* FED. R. CIV. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."); *Madden v. Just Believe Recovery Ctr., LLC*, 391 F. Supp. 3d 1121, 1127 (S.D. Fla. 2019) (Rosenberg, J.) (allowing the plaintiff to recover a $400 filing fee and $480 in process-server fees). The U.S. Marshals charge "$65 per hour (or portion thereof) for each item served by one U.S. Marshals Service employee, agent, or contractor, plus travel costs and any other out-of-pocket expenses." 28 C.F.R. § 0.114(a)(3). And "the Eleventh Circuit has been clear that, as a general rule, a Plaintiff may not recover process server fees that exceed the costs of having a U.S. Marshal effectuate service." *Phillips v. SC Cap. Ventures, Inc.*, 2020 WL 2988381, at *6 (S.D. Fla. June 4, 2020) (Altman, J.) (citing *EEOC v. W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000) (finding that "a district court does not abuse its discretion in taxing private process server fees *that do not exceed the statutory fees* authorized in [28 U.S.C.] § 1921" (emphasis added))). So, the total amount of recoverable costs is $467.60.

## V.     Prejudgment Interest

In his prayer for relief, the Plaintiff requests "prejudgment interest[.]" Mot. at 14. Federal law permits courts to award pre-judgment interest in civil cases. *See* 28 U.S.C. § 1961 (permitting interest in a civil case and providing a mode of computation). The Copyright Act doesn't specify whether a copyright owner is entitled to recover interest on an award of actual or statutory damages, and "a request for prejudgment interest on an award of damages and profits will be directed to the court's discretion." 50 AM. JUR. PROOF OF FACTS 2d 263 (originally published in 1988); *accord* ABRAMS ET AL., THE LAW OF COPYRIGHT § 17:29 (Oct. 2024 Update). But we deny the Plaintiff's request because he doesn't "explain why [he] is entitled to interest or how that interest should be calculated," even though

10

he "bears the burden of establishing [his] claims to relief[.]" *Affordable Aerial Photography, Inc.*, 2021 WL 2823270, at *5 (first citing *Stross v. Roberson*, 2019 WL 7562382, at *4 (M.D. Fla. Oct. 3, 2019) (Hoffman, Mag. J.), *report and recommendation adopted sub nom. Stross*, 2019 WL 5303676 (M.D. Fla. Oct. 21, 2019) (Dalton, J.) (denying pre-judgment interest where the plaintiff "provide[d] no argument or authority explaining why he [was] entitled to such relief, [or] . . . a computation of the prejudgment interest sought" and noting that "[i]t is the [p]laintiff's burden, not the [c]ourt's, to demonstrate that he is entitled to the relief sought"); and then citing *McKennon v. NewsCastic, Inc.*, 2018 WL 5847424, at *7 (M.D. Fla. Sep. 7, 2018) (Irick, Mag. J.), *report and recommendation adopted by* 2018 WL 5840687 (M.D. Fla. Nov. 8, 2018) (Mendoza, J.) (denying a similarly deficient request for prejudgment interest)); *cf. Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue [forfeits] it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed [forfeited]."); *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

***

After careful review, then, we hereby **ORDER** and **ADJUDGE** as follows:

1. The Plaintiff's Motion for Final Default Judgment [ECF No. 53] is **GRANTED**. In accordance with Federal Rule of Civil Procedure 58, final judgment will be entered separately.

2. The Plaintiff is awarded statutory damages against the Defendant Brickell Brokers LLC in the amount of **$3,000.00** under 17 U.S.C. § 504(c).

3. The Defendant Brickell Brokers LLC is **ENJOINED** from continuing to copy, store, or display the Plaintiff's copyrighted image under 17 U.S.C. § 502(a). Specifically, a permanent injunction is entered against the Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and

participation with the Defendant, prohibiting them from (a) directly or indirectly infringing the Plaintiff's copyright or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any works derived or copied from the Plaintiff's copyrighted photograph or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of the copyrighted photograph owned by the Plaintiff.

4. The Plaintiff shall be awarded attorneys' fees and litigation costs in the total amount of **$5,370.60** (composed of $4,903.00 in fees and $467.60 in costs) under 17 U.S.C. § 505 and Federal Rule of Civil Procedure 54(d).

5. This case shall remain **CLOSED**. All other deadlines are **TERMINATED**, and any pending motions are **DENIED as moot**.

**DONE AND ORDERED** in the Southern District of Florida on June 25, 2025.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record